In the Matter of the Estate of BEATRICE KATZ, Deceased.

Surrogate's Court, New York County, March 17, 1989

### APPEARANCES OF COUNSEL

*Seth Rubenstein, P. C.,* for Manuel Katz. *Shiff & Tisman* for Linda Osserman. *Blodnick, Pomeranz, Reiss, Schultz & Abramowitz, P. C.,* for Peter Adler. *Tanner Gilbert Propp & Sterner* for preliminary executors.

### OPINION OF THE COURT

RENEE R. ROTH, S.

In this contested discovery proceeding, motion by decedent's

husband for partial summary judgment presents a novel question in the law of gifts, namely, whether the owner of a cooperative apartment can validly transfer such apartment without approval from the cooperative board of directors.

Decedent, Beatrice Katz, allegedly made an inter vivos gift of her apartment to her two children by transferring her proprietary lease and 76 shares in the cooperative corporation. However, the proprietary lease provides (as is typical) that it may not be assigned without the approval of the board of directors (the Board). The underlying stock is similarly restricted.

This cooperative apartment (co-op) in the Hampshire House is the main asset of Mrs. Katz' estate. Under her will, executed March 30, 1983, just three months before her death on June 26, 1983, Mrs. Katz left the co-op in trust for the use and benefit of her husband Manuel for life with remainder upon his death to her two children from a prior marriage, Linda Osserman and Peter Adler. Mr. Katz has filed objections to the will.

During the ongoing probate contest, the preliminary executors (decedent's sister and brother-in-law) commenced this discovery proceeding to resolve the dispute between decedent's husband and her children over the ownership of the co-op.

Although the two children contend that decedent made an inter vivos gift of the apartment to them, their depositions before trial contain inconsistent descriptions of the alleged gift. Linda testified that her mother gave her the stock certificate on June 8, 1983 and that her husband, a lawyer, prepared the assignments at Mrs. Katz' request. Peter on the other hand testified that his mother gave him the certificate in September 1982. To support their claim, Peter and Linda submit the assignment of the proprietary lease and a stock power both dated June 8, 1983 and signed by Mrs. Katz. They have also produced stock certificate No. 1101 for the 76 shares in the co-op corporation.

Husband Manuel, however, has submitted written proof that in December 1982 decedent reported to the Board that her stock certificate (No. 1101) was lost. On the basis of her affidavit to that effect, the Board replaced her lost certificate (No. 1101) with a new certificate (No. 1112) dated March 3, 1983. This replacement was made three months before the alleged inter vivos delivery by decedent of the "lost" certificate (No. 1101) to daughter Linda.

As the movant on this motion for summary judgment, Mr. Katz must make a prima facie showing of his entitlement to such relief as a matter of law by tendering sufficient evidence to eliminate any material and genuine issue of fact *(Alvarez v Prospect Hosp.,* 68 NY2d 320; *Winegrad v New York Univ. Med. Center,* 64 NY2d 851; *Zuckerman v City of New York,* 49 NY2d 557, 563; *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 408). The children must establish that a material issue of fact exists which is genuine and not frivolous *(Black v Chittenden,* 69 NY2d 665; *Alvord & Swift v Muller,* 46 NY2d 276; *Platzman v American Totalisator Co.,* 45 NY2d 910; *Ehrlich v American Moninger Greenhouse Mfg. Co.,* 26 NY2d 255).

Clearly, there is a question of fact as to the time of the actual delivery of the stock certificate. If it was made in September 1982, as Peter testified, then why did Mrs. Katz make a disposition of the apartment in her will which was executed six months later on March 30, 1983? If delivery was made on June 8, 1983, as Linda testified and as the written assignment indicates, why did Mrs. Katz deliver to the children stock certificate No. 1101, which she had previously reported lost and which had been replaced by stock certificate No. 1112?

Mr. Katz, however, raises an issue of law which must be considered. He contends that, even if in fact an inter vivos transfer of the apartment was made on June 8, 1983, it was, as a matter of law, an incomplete gift because the children failed to obtain the approval of the Board, as required in the proprietary lease. In short, he contends that the necessary element of delivery is missing from the gift.

The elements of a valid gift are well established: (1) an intent on the part of the donor to make a present transfer; (2) delivery, either actual or constructive, of the property to the donee and (3) acceptance by the donee *(Gruen v Gruen,* 68 NY2d 48, 53; *Matter of Kelsey,* 26 NY2d 792, *affg* 29 AD2d 450; *Matter of Szabo,* 10 NY2d 94, 98; *Vincent v Rix,* 248 NY 76; *Matter of Van Alstyne,* 207 NY 298, 306; *Beaver v Beaver,* 117 NY 421).

As to the question of completed delivery where the donor of shares of stock failed to comply with the transfer requirements of the company, the courts have held that delivery need only be as complete " 'as the nature of the property and the

circumstances and surroundings of the parties will reasonably permit' " *(Matter of Szabo, supra,* at 98). Thus, generally, the physical transfer of a stock certificate constitutes delivery, even though all of the prescribed requirements for transfer (e.g., assignment on the corporate books by the stockholder) have not been satisfied *(Union Bank v United States Exch. Bank,* 143 App Div 128; *Matter of Ruszkowski,* 45 Misc 2d 380). It has frequently been held that the provision requiring entry of a transfer of ownership of stock on the corporate books is "intended solely for the protection of the corporation * * * and does not operate to prevent the passing of entire title, legal and equitable, as between the parties, by the delivery of the Certificate, with assignment and power of transfer" *(Chemical Natl. Bank v Colwell,* 132 NY 250, 256, and cases cited; *see also, Matter of Cristo,* 86 AD2d 700).

A respected treatise suggests that since the element of delivery is required to demonstrate that the donor's intent has been executed, the physical transfer of a stock certificate provides the same objective proof of execution as does the delivery of tangibles. All that is absent is the donee's rights vis-à-vis the corporation (Brown, Personal Property § 8.3 [3d ed]).

But neither the cases nor the authorities have considered whether delivery is complete where there is an assignment of stock and a proprietary lease which together constitute ownership of a cooperative apartment and which provide for transfer only upon Board approval.

Initially, it is noted that such a restraint cannot prevent a testator from disposing of a co-op by will *(see, Matter of Blakeman,* 518 F Supp 1095, 1099). It may nonetheless prevent the legatee from occupying the apartment. Although the validity of such restraints has been sustained *(see, e.g., Benson v RMJ Secs. Corp.,* 683 F Supp 359, 373; *Matter of Lacaille,* 44 Misc 2d 370), they do not insulate a cooperative apartment from levy of execution by a judgment creditor of the owner *(Swatzberg v Swatzberg,* 137 Misc 2d 1042; *Matter of Lacaille, supra; see also,* Rifkin, *Co-op Proprietary Leases Revisited,* 60 NY St BJ [No. 8] 12 [Dec. 1988]) because the levy attaches to the monetary value of the apartment and does not affect the right of occupancy. Finally, the purpose of the standard provision conditioning the transfer of a co-op on the approval of the Board is obviously not to protect any of the owner's rights but rather to enable the corporation to exclude persons who might prove to be undesirable neighbors (Note, *Co-opera-*

*tive Apartment Housing,* 61 Harv L Rev 1407, 1416 [1948]). It thus appears that the purpose of Board approval is similar to the purpose of entry of transfer of title on the corporate books, namely, the protection of the corporation.

Based upon the foregoing, this court concludes that the provision requiring approval of the Board for a transfer of a co-op cannot prevent its owner from making an effective inter vivos gift of such apartment. Although the donee may not be permitted to take possession, title will pass and the donee has the right to the monetary interest in the co-op. Because of this determination, there is no basis as a matter of law to grant summary judgment to Mr. Katz.

Some factual issues regarding delivery of the alleged gift were mentioned earlier in this decision. In addition, the fact that Mrs. Katz continued in possession of the apartment after the alleged gift does not necessarily defeat the fact of delivery but is a factor requiring explanation *(Gruen v Gruen, supra; Bean v McKenna,* 71 Misc 2d 512, *affd* 41 AD2d 1019). The fact that the gift was not asserted until after Mrs. Katz' death also requires consideration *(Matter of Kennedy,* 56 Misc 2d 1092, 1094, *mod* 36 AD2d 549; *Matter of Seigler,* 49 Misc 189, 191; *De Puy v Stevens,* 37 App Div 289, 291).

The children are entitled to an opportunity to prove that Mrs. Katz in fact intended to make an inter vivos gift of the apartment to them and that the gift was completed considering the nature of the property and the circumstances surrounding the alleged gift. The presence of the factual issues discussed above precludes summary judgment (CPLR 3212 [b]; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, *supra).*

Accordingly, the motion is denied. A trial date will be fixed by the court in the order to be submitted herein on notice.